UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EMANUEL J. ROTHIS,

    Plaintiff,

v.                                                   CASE NO: 8:10-cv-446-T-23EAJ

M&I MARSHALL AND ISLEY BANK,

    Defendant.

_____/

## **O R D E R**

Emanuel J. Rothis sues M & I Marshall & Isley Bank ("M & I") for "breach of duty of care, duty of good faith, and duty to disclose" (count one), negligence (count two), negligent misrepresentation (count three), unjust enrichment (count four), "duress" (count five), and fraud (count six). A successor-in-interest to Gold Bank, M & I moves (Doc. 4) to dismiss for failure to state a claim, and Rothis responds (Doc. 17) in opposition. M & I moves (Doc. 5) to strike Rothis's demand for a jury trial, and Rothis responds (Doc. 18) in opposition.

### Factual Allegations

In 2005, Thomas J. LeFevre formed Bayonne Investment, LLC, to develop a "large scale mixed-use real estate project" in Sarasota County, Florida. At the time, an appraiser valued the real estate at $17,900,000.00 and predicted that the value would increase to $19,900,000.00 after re-zoning. (Doc. 2, ¶ 17(b))  Seeking financing for the project, Lefevre met with Karyn Wild—a Gold Bank loan officer with whom LeFevre had

a "past and personal relationship"—to negotiate for a $13,433,893.00 loan. (Doc. 2, ¶¶ 13-14, 17(a))  Gold Bank informed LeFevre that the loan required an interest reserve account of $1,340,000.00 and an additional guarantor with at least $1,000,000.00 in unencumbered liquidity. (Doc. 2, ¶ 17(c)-(d))  Wild knew that LeFevre lacked sufficient liquidity, and Bayonne's other investors refused to sign a personal guaranty. (Doc. 2, ¶ 18)

In summer, 2005, Wild and LeFevre met with Rothis and convinced Rothis to sign an unlimited personal guaranty and to pay $500,000.00 into the interest reserve account for the loan.  (Doc. 2, ¶ 19, 25)  Wild and LeFevre told Rothis that he would double his investment, described the personal guaranty as a "mere formality," and assured Rothis that he would escape liability in the event of a default because the value of the land exceeded the value of the loan. (Doc. 2, ¶ 20, 22-24)  Gold Bank requested a financial statement and tax returns from Rothis but failed to verify the information provided by Rothis. (Doc. 2, ¶¶ 26-29)  Gold Bank's underwriting analysis shows that the value of the purchased land sufficiently secured the loan, but Gold Bank required unlimited personal guaranties from both Rothis and LeFevre. (Doc. 2, ¶ 30-31)

Gold Bank lent Bayonne $12,245,838.00. (Doc. 2, ¶ 33)  M & I acquired Gold Bank shortly thereafter and accepted assignment of the loan.  (Doc. 2, ¶ 41)   Some time after the loan closed, Rothis paid an additional $200,000.00 into the interest reserve account. (Doc. 2, ¶ 43)   M & I repeatedly amended and restated the loan to add accrued interest. (Doc. 2, ¶¶ 45, 54, 63)   After each amendment, M & I required Rothis and LeFevre each to sign an additional, unlimited personal guaranty.  (Doc. 2,

- 2 -

¶¶ 46, 55, 64)  On October 30, 2007, Bayonne executed a renewal and extension of the loan, but the terms and personal guaranties remained unchanged.  (Doc. 2,¶¶ 70-71)  The complaint alleges that, at the time that Rothis signed each unlimited personal guaranty, Wild knew that Rothis relied on Wild's advice; Wild failed to explain the ramifications of signing the guaranty; Wild assured Rothis that the guaranty was a "mere formality" because of the value of the real estate; and Wild knew or should have known that both Rothis and LeFevre lacked the net worth and liquidity to guaranty the loan. (Doc. 2, ¶¶ 35-40,44, 47-53, 56-60, 62, 65-69, 72-73).  On October 30, 2007, when Rothis signed the last unlimited personal guaranty, the bank knew that LeFevre's other projects funded by M & I faced financial peril; that Lefevre had stopped communicating with M & I; that LeFevre had invested most of his assets in speculative real estate deals; that Bayonne's risk rating had increased; and that Rothis's assets provided the financial strength behind the loan. (Doc. 2, ¶ 74)

Bayonne defaulted on the loan and failed to respond to M & I's demand for payment of $14,640,641.37. (Doc. 2, ¶¶ 76-79)   M & I sold and assigned the loan to SPCP Group, LLC, at a "steep discount," and SPCP sued Rothis to recover the full value of the loan.  (Doc. 2, ¶¶ 79-81)   A Michigan court found Rothis liable under the unlimited personal guaranties for the full value of the loan, and Rothis settled with SPCP for $240,000.00. (Doc. 2, ¶¶ 99-100).  (Neither party has raised or briefed the issue of whether any claim in this action is barred because the claim was not raised in the Michigan case.)

Rothis alleges that, by lending Bayonne money, Gold Bank engaged in "unsound and negligent lending practices and failed to use that degree of skill and care that a reasonably prudent bank would have exercised under like and similar circumstances." (Doc. 2, ¶ 84) Count one asserts that Gold Bank breached a duty to exercise due care and good faith while negotiating the loan, breached a duty to disclose material facts to Rothis (Doc. 2, ¶¶ 105-06), and failed to follow the bank's lending policy. (Doc. 2, ¶ 107) Count one alleges that Gold Bank failed to verify the guarantors' financial statements; "failed to advise or negligently advised Rothis[] that[,] based upon the unlimited personal guaranties he signed[,] he was liable for the entire balance of the Loan upon default"; allowed LeFevre to use the property that the loan purchased as an asset on his financial statement; and failed to properly supervise and instruct bank employees. (Doc. 2, ¶ 108) The complaint alleges that Gold Bank's failure to exercise due care and good faith caused Rothis's damages. (Doc. 2, ¶¶ 110-11) The bank allegedly failed to disclose a number of other facts, most of which concern LeFevre's finances. (Doc. 2, ¶ 112)

Counts two and three essentially repeat the previous factual allegations but categorize the allegations as claims for negligence and negligent misrepresentation. Count four alleges that Gold Bank received a financial benefit from the loan to Bayonne and that the benefit unjustly enriched Gold Bank because Rothis relied on "false misrepresentations" by Wild. (Doc. 2, ¶ 148) Count five alleges that Rothis acted under duress when he provided the second contribution to the interest reserve account. Count six alleges that several of Wild's statements constitute fraud.

## Discussion

### I. "Breach of Duty" and Negligence (Counts One and Two)

A disorganized "shotgun pleading," the complaint confusingly scatters elements of an array of claims throughout the complaint. In count one, the complaint alleges that M & I breached a "duty of care, duty of good faith, and duty to disclose" but identifies no theory of liability other than a general obligation not to "breach" a "duty." Count two alleges negligence (apparently separate from the breaches of duty alleged in count one). In response (Doc. 18) to the motion to dismiss, Rothis argues that the question of duty is reserved for summary judgment. However, the existence of a duty is a question of law, and Rothis's mere legal conclusions fail to withstand a motion to dismiss.

### A. The Complaint Fails to Allege a Fiduciary Duty to Disclose

"Generally, the relationship between bank and borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities." Capital Bank v. MDV, Inc., 644 So. 2d 515, 518 (Fla. 3rd DCA 1994). A fiduciary relationship between a debtor and a creditor arises only if the creditor has a joint proprietary interest in the enterprise, an expectation to share in profit or loss, or some arrangement apart and distinct from the loan. First Wisconsin Nat'l Bank of Milwaukee v. Roose, 348 So. 2d 610, 611 (Fla. 4th DCA 1977). Absent a proprietary or other pecuniary interest, the bank owes no duty of disclosure or other fiduciary duty to a potential borrower or guarantor. See, e.g., Klein v. First Edina Nat'l Bank, 196 N.W.2d 619 (Minn. 1972) ("[W]hen a bank transacts business with a depositor or other customer, it has no special duty to counsel the customer and inform him of every material fact relating to the transaction—including the bank's motive, if material, for

participating in the transaction—unless special circumstances exist, such as where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him.").

A narrow exception appears in Barnett Bank of West Florida v. Hooper, 498 So. 2d 923, 925 (Fla. 1986), in which Hooper requested a loan from the bank to invest in a company owned by a second bank customer, whom the bank suspected of operating a "check kiting scheme." The bank deposited Hooper's "investment" into the company account, which would have overdrawn without the investment. Hooper states that the "investment" encouraged by the bank permitted the bank to collect the loan and "to zero out the [company] account and suffer no loss." Hooper finds:

> [W]here a bank becomes involved in a transaction with a customer with whom it has established a relationship of trust and confidence, and it is a transaction from which the bank is likely to benefit at the customer's expense, the bank may be found to have assumed a duty to disclose facts material to the transaction, peculiarly within its knowledge, and not otherwise available to the customer.

In the present case, although Gold Bank participated in the transaction, the bank expected to gain only the value of the interest, which distinction precludes the "fiduciary" character of the relation.[1] Hooper recognizes that a broad fiduciary duty of disclosure would overly burden the banking industry. If a loan officer's advice or encouragement creates a fiduciary relationship, a bank cannot secure business or inform a client without prospective liability.

---

[1] See Carpenter v. Community Bank of Homestead, 710 So. 2d 65 (Fla. 3rd DCA 1998); Reimsnyder v. Southtrust Bank, N.A., 846 So. 2d 1264 (Fla. 4th DCA 2003).

Signed as part of a single series of transactions, the personal guaranties required to underwrite the loan fail to constitute a separate agreement and fail to create a fiduciary relationship between Rothis and Gold Bank. The complaint alleges neither that Gold Bank held a proprietary interest in Bayonne nor that Gold Bank expected to share in Bayonne's profit or loss. Merely lending Bayonne money, Gold Bank established only an arms-length, creditor–debtor relation, which creates no general fiduciary duty to Rothis.

### B. The Economic Loss Rule Bars Rothis's Claim for Breach of the Duty of Care

To state a claim for negligence, a plaintiff must allege that the defendant owed a duty of care, that the defendant breached the duty of care, that the breach injured the plaintiff, and that the breach proximately caused the injury. See Wallace v. Dean, 3 So. 3d 1035, 1046 (Fla. 2009). The duty of care operates as "a minimal threshold legal requirement for opening the courthouse doors." McCain v. Florida Power Corp., 593 So. 2d 500, 502 (Fla. 1992). Although Rothis repeatedly asserts that Gold Bank failed to act prudently (in other words, that no reasonably prudent bank would lend money to Bayonne with only Rothis's personal guaranty), the economic loss rule bars an action in tort to recover an economic loss arising from a contract. Indemnity Ins. Co. of N. Am. v. American Aviation, Inc., 891 So. 2d 532 (Fla. 2004). This rule prevents a party "from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." 891 So. 2d at 536. To recover in tort for a loss arising from the loan agreement, Rothis must prove that the bank assumed some additional duty. As already discussed, Wild's alleged interactions with Rothis create no fiduciary relation,

- 7 -

and the terms of the guaranties confer no additional duty. Instead, the guaranties transfer the risk of default directly to Rothis. After contractually agreeing to accept the risk of default, Rothis may not sue Gold Bank in tort to avoid the loss. The economic loss rule bars Rothis's negligence claim for breach of a general duty of care.

### C. Florida Law Recognizes no General Duty of "Good Faith"

No general duty of good faith exists under Florida law. Although the law implies a duty of good faith in every contract, the duty of good faith cannot add a term to the contract. As a result, the duty of good faith attaches only to the performance of an express term of a contract. Flagship Resort Dev. Corp. v. Interval Int'l, Inc., 28 So. 3d 915, 924 (Fla. 3rd DCA 2010). Rothis fails to allege that Gold Bank breached a duty to exercise good faith in performing a specific contractual obligation. Instead, the complaint asserts only that the bank violated a general duty of good faith during negotiation of the loan. Rothis fails to state a claim for breach of a duty of good faith.

### II. Fraud and Negligent Misrepresentation (Counts Three and Six)

In counts three and six, Rothis alleges that Wild negligently and fraudulently misrepresented the nature and extent of the risk of signing the unlimited personal guaranty. The complaint alleges:

> Wild's statements to Rothis that he was making a sound investment because the value of the real estate exceeded the amount of the Loan, that the personal guaranty was nothing more than a mere formality required by the Gold Bank loan committee, and that if [Bayonne] defaulted, Rothis would not be personally liable for any amount on the guaranty he signed because the value of the real estate exceeded the amount of the Loan, were false and concerned material facts relating to the transaction.

To state a claim for negligent misrepresentation under Florida law, a plaintiff must allege that:

> (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted in a party acting in justifiable reliance upon the misrepresentation.

Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784, 786 (Fla. 2d DCA 1993).

To state a claim for fraud under Florida law, a plaintiff must allege:

> (1) a misrepresentation of a material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement that the representation would induce another to rely and act on it; and (4) that the plaintiff suffered injury in justifiable reliance on the representation.

Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So. 2d 204, 209 (Fla. 3rd DCA 2003). Both fraud and negligent misrepresentation require a misrepresentation of a material fact. "Under Florida law, a fact is material if, but for the misrepresentation, the aggrieved party would not have entered into the contract." Ribak v. Centex Real Estate Corp., 702 So. 2d 1316, 1317 (Fla. 4th DCA 1997). Neither an opinion nor a promise of future action supports a claim of fraud or negligent misrepresentation. Mejia v. Jurich, 781 So. 2d 1175 (Fla. 3rd DCA 2001).

Each statement alleged in the complaint relies on the fact that the value of the property exceeded the value of loan. The complaint states that the value of the property (17,900,000.00) exceeds the value of the loan ($13,433,893.00). Thus, each of Wild's factual statements was true when uttered. Rothis does not dispute that Wild's assertion that Rothis would double his money is (at best) an opinion. Wild characterized the

personal guaranties as a formality and suggested that Rothis would not be liable for the loan because of the appraised value of the land. No reasonable jury could conclude that Gold Bank required Rothis to sign the guaranty agreements on a lark, nor could any reasonable jury conclude that Rothis believed the personal guaranties were completely meaningless. Although the value of the land decreased, Rothis alleges neither that the appraiser incorrectly valued the land nor that Wild had knowledge of any improper appraisal. Rothis's claim, as framed in his complaint, reduces to an allegation that Wild defrauded Rothis by failing to predict a precipitous decline in real estate prices.

### III. Unjust Enrichment (Count Four)

To state a claim for unjust enrichment, Rothis must allege that he conferred a benefit on Gold Bank, that Gold Bank appreciated the benefit, and that inequity would result from Gold Bank's failing to pay fair value for the benefit. Vega v. T-Mobile USA, Inc., 564 F.3d 1265, 1274 (11th Cir. 2009). Rothis fails to allege that inequity would result from Gold Bank's retention of his money. Gold Bank procured Rothis's contributions to the interest reserve in an arms-length negotiation, and Gold Bank performed under the loan. Indeed, Rothis's complaint suggests that, rather than obtaining a windfall, Gold Bank lost money by selling the debt in a "fire sale." Although Rothis alleges that inequity results from Gold Bank's retention of the interest payments, Rothis contractually agreed to the interest payments. Rothis personally guaranteed the loan in the event of default, Bayonne defaulted, and Rothis suffered the loss in accord with the guaranty. The complaint utterly fails to establish a claim for unjust enrichment.

### IV. Duress (Count Five)

Rothis alleges that he agreed under duress to sign the loan guaranties and replenish the interest reserve account. The alleged duress arose from Rothis's fear of losing his investment. However, Florida recognizes economic duress only as an affirmative defense to enforcement of a contract. Riedel v. NCNB Nat'l Bank of Fla., Inc., 591 So. 2d 1038, 1040 (Fla. 1st DCA 1991) (noting that "economic duress . . . is not recognized as an independent cause of action in Florida"). Count five fails to state a claim for relief.

### Conclusion

Rothis signed an unlimited personal guaranty on four occasions to secure financing for Bayonne. Rothis knew that Gold Bank would not provide financing without these unlimited personal guaranties. Bayonne defaulted on the loan, and Rothis suffered a substantial loss. Rothis aspires to transfer the loss to M & I, Gold Bank's successor, by alleging that Rothis failed to comprehend the loan agreements and lacked the assistance of counsel. Gold Bank bargained at arms-length for the personal guaranties, which transfer the risk of default to Rothis. For the reasons stated in this order, M & I's motion (Doc. 4) to dismiss is **GRANTED WITH PREJUDICE** as to counts I, II, IV, and V and **GRANTED WITHOUT PREJUDICE** as to counts III and VI. On or before **October 22, 2010**, Rothis may file an amended complaint. On or before **November 12, 2010**, the defendant shall answer or file a renewed motion to dismiss. Rothis's request (Doc. 19) for oral argument is **DENIED** without prejudice to his right to request oral argument on any renewed motion to dismiss. The defendant's motion to

strike the plaintiff's jury demand (Doc. 5) is **DENIED** without prejudice to his right to renew that motion

ORDERED in Tampa, Florida, on September 29, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE